WALLACE, SMUIN & COMPANY, Respondents, *v.* F. J. McLAUGHLIN AND O. C. LOCKHART, Appellants, AND SYMNS UTAH GROCER COMPANY, Respondent, *v.* F. J. McLAUGHLIN AND O. C. LOCKHART, Appellants.[1]

Proceedings Supplementary to Execution.—Scope of Inquiry. —What May be Determined.—Jurisdiction.—Rights of Third Parties.—Pleading.—Province of Jury.—Each of the plaintiffs obtained a judgment against the defendants M. and L., who were co-partners carrying on a merchandising business at Park City. Under the provisions of 2 Comp. Laws 1888, §§ 3455, 3457-58, supplementary proceedings were instituted before a referee, wherein it appeared that M. and and L. had liabilities amounting to $25,000 and assets consisting of merchandise and book accounts aggregating near that sum. They were indebted to the Park City Bank in the sum of $15,000, and to plaintiffs in the sum of $1,625 and $2,500 respectively. A corporation was formed, and all the assets of the co-partnership were transferred to it in full payment of the stock, all of which was virtually held by M. and L. M. and L. transferred their stock to the receiver of the bank to secure its claim and subsequently to plaintiffs, to secure their claims, subject to the lien of the bank. Afterwards, the stockholders, who were the directors, transferred the entire stock of merchandise to M. and L., who immediately executed a deed of assignment conveying all their property, real and personal, to one R., assignee, for the benefit of their creditors, preferring the claim of the bank. Afterwards, the assignee transferred the entire stock of merchandise to the receiver of the bank in payment of its claim. Pending the hearing before the referee, the directors of the corporation hastily met and declared a cash dividend covering the sum of $2,000 held by L., the treasurer of the corporation, being the proceeds of sales of merchandise by it. L. had also transferred without consideration 129 shares of building association stock valued at $1,290, to one

[1] Rehearing denied Feb. 24, 1896.

## 412   WALLACE, SMUIN & CO. v. McLAUGHLIN.

W., a garnishee. The referee made findings, which were affirmed and judgments duly entered for the plaintiffs, which were afterwards set aside, and the court upon the evidence taken by the referee found that the $2.000 in the possession of L., was the property of defendants, and that the stock of the building association was the property of L., and that the merchandise transferred to the receiver of the bank was the property of the defendants, and ordered the building stock to be sold, and together with the $2,000 to be applied in payment of plaintiffs' judgments, and authorized plaintiffs to commence suit against the receiver for the recovery of the merchandise or the proceeds of its sale, and required the receiver to make no disposition of the moneys arising from the sale of the goods until the action could be commenced and prosecuted to judgment, and on these findings, judgments were entered accordingly. *Held*, that the court exceeded its jurisdiction in rendering such judgments: *First*—In that the rights in and claims to the property in controversy of the corporation, its assignee, the bank and its receiver, were adjudicated without making them parties to the action or granting them a hearing. *Second*—In that important issues of fact respecting property rights and bona fides of transactions of various persons were determined without pleadings or issues joined. *Third*—In that a supplementary proceeding, it is a gross perversion of the statute to hold that the court can exercise all the powers of a court of Equity and pass upon questions of fact, the determination of which is within the province of a jury.

(Nos. 576,577.   Decided Dec. 21, 1895.   43 P. R. 109.)


APPEAL from the District Court of the Third Judicial District.   Hon. Samuel A. Merritt, *Judge*.

Proceedings supplementary to execution by Wallace, Smuin & Company, a corporation, and of the Symns Utah Grocer Company, a corporation, against F. J. McLaughlin and O. C. Lockhart. From judgments in favor of the plaintiffs in each case, defendants appeal. *Reversed.*

*Messrs. Brown & Henderson,* for appellants.

The judgments appealed from are entirely void. The order for examination and all the subsequent proceedings are void. These proceedings are taken under section 3455, second volume, Comp. Laws of Utah Territory, p. 318; they are taken against third parties as well as the judgment debtors. Proceedings under these statutes are substitutes for the former remedy by bills in equity, and the section above referred to provides for both kinds of proceedings: *First*—Proceedings after execution returned; and *Second*—After execution issued and while it is in the hands of the officer.

In the first case the proceeding is a substitute for the bill in equity to reach all assets belonging to the judgment creditor, whether legal or equitable, and to put them in the hands of the court. Under the second, it is a substitute for the bill in equity in aid of execution to discover property. In these causes the proceedings are the substitute for the creditor's bill, that is, to reach assets after return of execution unsatisfied. This is stated in the affidavit upon which the order was made and is recited in the order, so they are to be adjudged and determined by the principles applying to that proceeding. They cannot be construed to be proceedings in aid of execution while execution is outstanding, because the order recites to the contrary; and again, in proceedings under this statute in aid of execution, it is necessary to point out in the affidavit, the same as it was originally in equity in a bill in aid of execution, the particular property which was to be reached. These principals are so elementary and well settled by adjudication that we deem it unnecessary to cite authorities.

We have then proceedings instituted supplemental to execution, to reach the assets, legal and equitable, of the

judgment debtors, against judgment creditors and third persons after return of execution.   It will be seen by reference to the statute that these proceedings are to be had in the same court in which the judgment is rendered, and requires certain facts to be stated by affidavit to the satisfaction of the judge.   Those facts are that "any person or corporation has property of such judgment debtor or is indebted to him in an amount exceeding fifty dollars," etc. These are the only facts which it is permitted to show by the affidavit.   The proceedings, however, by the section can only be had when execution has been issued and returned unsatisfied but this · must be shown by the record. The proceedings being in the same court in which the judgment is rendered, the record is before the judge and these facts are required to be shown by that record and not by affidavit.   *Temm* v. *Stegman*, 32 Pac. Rep. 1004 (Wash.); *Balz* v. *Benninghof*, 5 Ind. App. 322, 32 N. E. 595.

In this case it clearly appears from the record that there was no such proof before the court by the record.   The order itself recites the proof upon which it was made and it recites that it was made to appear by the affidavits that execution had been issued and returned.   These proceedings are *in rem*.   They are statutory and the requirements of the statute must be strictly complied with to give the court jurisdiction.   *Temm* v. *Stegman, supra; McDonald* v. *Moore,* 65 Iowa, 171; 21 N. W. Rep. 504; 1 Waite's Prac. 43.

If it be said that the *ex parte* order in the first instance might be made, still the record in this case shows that the jurisdictional fact was never made to appear.   The case was tried before the referee and testimony taken in full, and there is no hint in the record from first to last that any such evidence was produced.   The evidence, at least of this jurisdictional fact, had to be shown, and without

that the proceedings were absolutely void. The record shows that all the testimony taken in the case upon which the orders were made is before this court, and no such testimony was given in any way. *Balz* v. *Benninghof, supra*; *Temm* v. *Stegman, supra.* And the mere recital in the affidavit of these facts are not sufficient to prove it. See cases before cited, and *Reynolds* v. *Brown*, 15 Bar. 25. Some of the defendants in these proceedings were not parties to the original action, and the affidavit upon which the *ex parte* order was made is but the pleading in the supplemental proceedings, and the allegations therein must be made good by proof of the facts required by the statute to be shown: In other words, the proof must show, taken before the referee, that a judgment was entered. The case of *Temm* v. *Stegman*, above referred to was under a statute literally like ours, and the court there say:

" An essential fact necessary to the jurisdiction of the court in this matter was the rendition of a valid judgment against the principal debtor and the issuance of an execution thereon (that was a proceeding in aid of execution still outstanding) otherwise the court had no jurisdiction to make the order requiring the appellant to appear, and the appellant had no right to waive a jurisdictional matter in the premises."

So that under our statute upon the hearing, the essential facts to be shown before an order could be made were:

*First*—That a valid judgment had been rendered.

*Second*—That an execution had been issued.

*Third*—That the execution had been returned unsatisfied after diligent inquiry by the officer having it in charge.

*Fourth*—The other facts alleged in the affidavit, that is, that the defendants in the proceedings had property in their possession belonging to the defendants. The judg-

ment was shown but no execution whatever in either case. This is an appeal from these proceedings and it is a direct attack and not a collateral one. If the proceedings were void.it could even be attacked in a collateral proceeding. In this proceeding on appeal it can be attacked if they are void and also if they are erroneous. We therefore submit that the entire proceedings in each of these cases are wholly void and without any jurisdiction whatever. *First*— As shown by the recitals in the *ex parte* order made in the first place, and *Second*—As shown by the evidence, or rather the want of evidence, to show the jurisdictional facts. The findings of fact made by Referee Harris which were afterwards set aside and held for nothing by the court, recite the fact of the issuing of an execution and its return, but the record shows that it was made without any foundation, in fact whatever, and those findings have been set aside by the court. If the court had jurisdiction for any purpose, the judgments and orders appealed from are void, because they undertake to pass upon matters over which the court had no jurisdiction.

Section 3458 of the Comp. Laws provides what order may be entered by the court where the property is claimed by any other person or corporation, and that is, that the court may authorize by an order made to that effect, the judgment creditor to institute an action against such person or corporation for the recovery of such interest or debt, but the court in supplemental proceedings cannot try title to property which is in dispute. *Hagerman* v. *Ton Lee,* 12 Nev. 331; *Parker* v. *Page,* 38 Cal. 522; *Rodman* v. *Henry,* 17 N. Y. 482; *Hartman* v. *Olivia,* 51 Cal. 501; Riddle on Supp. Pro 124-5-6; *Sherwood* v. *N. Y. R. R. Co.,* 12 How. 136; *Teller* v. *Randall,* 40 Barb. 242; *Mc-Dowell* v. *Bell,* 86 Cal. 615; 20 How. Prc. Rep. 155; *Bank* v. *Pugsley,* 47 N. Y. 368.

*Messrs. Jones & Schroeder,* for respondents.

This is an appeal from a judgment and order made by the court below on the 8th day of December, 1894, directing the payment of money and the delivery of certain property, and also entering judgment for costs. In other words it is an appeal from the judgment of the court below under section 3652 of the Comp. Laws of Utah, 1888, which is as follows: "Upon an appeal from a judgment, the court may review the verdict or decision, or any intermediate order, if excepted to, which involves the merits or necessarily affects the judgment except a decision or order from which an appeal might have been taken."

From this section it appears that no intermediate order made by the court in the trial or in any proceeding in this action is appealed from, if any orders, in their nature appealable, were made sixty days before the final entry of judgment, or the final decision of the court, and as the records fail to disclose any orders made within sixty days prior to the appeal except the decision and final judgment, the only question which this court is called upon to review is the final decision of the court, entered on the 8th day of December, 1894.

Section 3391, 2 Vol. Compiled laws of Utah, 1888, provides that: "An exception is an objection upon a matter of law to the decision made either before or after judgment by a court, tribunal, judge, or other judicial officer, in an action or proceeding. The exception must be taken at the time the decision is made, except as provided in the next section," and in the next section certain orders and decisions are referred to.

In section 3393 it is provided that: "No particular form of exception is required, but when the exception is

to the verdict or decision, upon the ground of the insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient."

We take it from these sections that it was necersary for the appellant to take their exceptions at the time the decision was made, and to specify at that time the particulars in which the evidence was insufficient to justify the decision of the court, but this was not done.

The first legal question which appellants present to this court for its consideration is the want of jurisdiction on the part of the court below to enter the judgment appealed from; and this want of jurisdiction, they say, arises from the failure of the respondents to prove the issuance and return of executions unsatisfied before the commencement of proceedings supplemental to execution. We desire the court to bear in mind that this is an appeal from the decision and judgment of the court made on the 8th day of December, 1894, and from nothing more; hence the order made by the court on the 28th day of November, 1893, in which the court assumes jurisdiction and appoints a referee in supplemental proceedings is not appealed from, and the validity of that order and the right to assume jurisdiction at that time over the defendants and their property is in no manner assailed or called in question.

Under our statute it is well settled that the order appointing a referee in supplemental proceedings is such an order as may be appealed from, if the appeal be taken within sixty days. 2 Compiled Laws, Subdivision 3, § 3635.

We are now brought face to face with the only question presented for the consideration of this court in the appellants' brief; namely: Had the court jurisdiction of the parties and the subject matter; and the power to de-

termine the questions and enter the judgment which it did enter on the 8th day of December, 1894?

Upon the threshold of the discussion as to the jurisdiction of the court to enter judgment herein, we direct the attention of this court to the universal opinions of the text writers and courts who by unanimity of decisions and conclusions have raised a structure of such magnitude and proportions as cannot be vaulted by even appellants' counsel, with their well known attainments in legal gymnastics.

In Brown on Jurisdiction, p. 52, § 20 *a*, the author says: "The law books are filled with sayings of judges, in speaking of courts of general jurisdiction; and if a court be one of general common law jurisdiction the presumption arises that because of its acquaintance with the formalities of the law and the rules of practice governing it, it acted in accordance with such rules and did not act until prerequisite prescribed by law had been complied with, unless the contrary appears from the face of the record." The author in support of this proposition cites cases from nearly every state in the Union which uphold this presumption.

In *Hahn* v. *Kelley*, 34 Cal. 391, on p. 402, the court says: "It is a matter of no consequence whether the jurisdiction of the court appears affirmatively on the judgment roll or not, for if it does not it will be conclusively presumed." On page 407 the court says: "We consider the rule to be that legal presumptions do not come to the aid of the records, except as to acts or facts concerning which the records are silent. When the record is silent as to what has been done, the presumption is that what ought to have been done was not only done, but rightly done." Again, on page 409 the court says: "The presumptions of law are in favor of the jurisdiction and the regularity of the proceedings of superior courts, or courts

of general jurisdiction." 21 Tex. 491; 12 Minn. 221; 31 Ind. 376; 2 Kan. 70; 20 Ohio, 344; 24 Ga. 245; 9 Gratt. 323; 22 Me. 131; 14 Wisconsin, 28; 28 N. Y. 656; 23 Mich. 286; 17 Wend. 483; Lawson's Pre. Ev. p. 28; 33 Gratt. 37; Elliott App. Procedure, 717; 81 Vermont, 777; 1 Black on Judgments, 288; 1 N. Y. 90. From the fact that the court exercises jurisdiction, a finding of jurisdictional facts will be presumed. 2 Am. State Rep. 925.

The court after having assumed jurisdiction, after a lapse of time, cannot be impeached. Wood's Prac. Evidence, 205; 11 Am. State Rep. 256 and 266.

We must say that in view of the authorities, the presumption of jurisdiction attaches in every case where it does not affirmatively appear from the records that the court was without jurisdiction. Where then, in this record, is there anything which shows, or tends to show, that the court acted without jurisdiction?

Counsel for the appellants contend that because it does not affirmatively appear that the executions were issued and returned in these cases, therefore, the court was without jurisdiction and ask this court to reverse the rule settled by all authorities, and that too without any authority upon which to base such a rule.

Another answer to appellants' contention that because the executions were not offered in evidence the court had no jurisdiction, is, that a court of general jurisdiction takes judicial notice of all the records and files in the case on trial, and what has been done or omitted to be done; that is, what papers in the case have been filed and returned, or not filed or returned. He is presumed to know and he is presumed to have examined the records and files in the case and ascertained therefrom all the evidentiary facts which could be obtained from such examination. In support of this proposition we cite:

Wood's Prac. Ev. 633; Rice on Ev. Vol 1, § 16, § 20, d., pages 14 and 19; and cases cited.

In *Hollenbach* v. *Schnabel*, 35 Pac. (Cal.) 872, the court says: "I am of opinion the court was at liberty to take judicial notice of the proceedings had in the cause, the evidence of which, under the official signature of its sheriff, was, as provided by the code on file in the case. Courts will take judicial notice of their records and officers." The case of *Blum* v. *Stein*, 68 Tex. 608; 5 S. W. 454, involves a like principle and is cited by the court in this case: Also 16 Kan. 475; 89 Am. Dec. 689 and note; Abb. Trial Brief, § 36, p. 28; § 55, p. 52. We contend that when the judgment debtor has appeared and submitted himself to the jurisdiction of the court and been examined as to his property, without making any objection to the proceedings in any manner, that the court has no authority to make any necessary order in the premises and the judgment debtors, by not objecting to the proceedings at the time, waive their rights to afterwards object." Rid. & Bull. on Sup. Proc. p. 449–50.

We call the court's attention to the case. *In re B. F. Perry,* 30 Wisc. 269. In that case, which was a case in supplemental proceedings, the court says: "The existence of the judgment against P., the execution issued thereon and its return unsatified in this proceeding;—it is unimportant here whether they were properly proven before the commissioner prior to the making of the injunction order, and failure to prove them would affect only the regularity of his action, and not his jurisdiction." In support of appellant's position that the judgment is void because there is no evidence of the issuance and return of the executions, they cite but three cases and these to our minds have no application to the case at bar. In the first case, that of *Timm* v. *Stegman*, 32 Pac. 1004, the court starts out by affirming the proposition which respondents have heretofore

stated. That is, that a court will take judicial notice of
the records and files in the case before it, and goes so far
as to say that the affidavit which, according to the statute
is required to state that an execution has been issued and
returned *nulla bona*, need not contain such a recital,
because the court will take judicial notice of that fact.
It further appears that the judge certifies that the record
contained all the material facts in relation to the proceed-
ings and the record failed to disclose anything which
would tend to show that there had not been an execution
issued in the case.

In the case of *McDonald* v. *Moore*, 24 N. W. Rep. 504,
the next case upon which counsel rely, the facts and cir-
cumstances are entirely different. That was an action at
law against a garnishee tried to a jury upon issues of fact
presented by petition and denied by answer. Under such
a state of facts of course it would be necessary when the
fact of garnishment had been denied, to prove it by the
writ itself, which would be the best evidence of what had
been done, and the jury must determine the question from
the evidence before it, and could not take judicial notice
of anything. How different is the case at bar! Here
there is no denial of the issuance, and return of the
executions and no question of that kind is presented, and
here the case was tried to the court, who had all the
records in the case before him.

The last case cited by appellants, that of *Balz* v. *Ben-
ninghof*, 32 N. E. Rep. 595, cannot be taken as a prece-
dent in the case at bar for the reason that the record in
this case introduces us to a state of facts and to conditions
with which we are entirely unacquainted in the case at
bar. It is said by the court in the Indiana case that "there
was no evidence whatever, showing or tending to show that
an execution had been issued and returned as provided by
statute." It, therefore, affirmatively appeared that the

things necessary to give jurisdiction had not been done.

Counsel for appellants contend that the orders made in these cases by the court cannot stand for the reason that there were issues of fact presented on the hearing and the court cannot in supplementary proceedings determine such issues but must, in cases of dispute as to the ownership of property in proceedings like these, order a suit to determine the issue of fact. We concede the law to be that where there there is *a denial in good faith aud that denial is not a mere sham,* but presents an issue, then the court has no power to determine that question in these proceedings.

We now invite the court to a consideration of the power of courts or referees in proceedings of this kind to make orders requiring judgment debtors or other parties to turn over property found in their possession, and we know of no better place to begin than with the second case cited by appellants in their brief on this question, that of *Parker .v. Page,* 38 Cal. 522; where the court not only says: "*in proceedings supplemental to execution the denial of the debt, or the adverse claim of the property by the garnishee, contemplated by the Practice Act, is a claim or denial in good faith, and not. one of mere pretense;*" but goes on further and says that, "*When it is evident that the garnishee is acting in bad faith in denying his indebtedness or asserting his claim, the referee may treat it as fraudulent, and disregard it.*" We invoke the careful consideration of this case by the court, because we believe that in it we have the law of the cases at bar; and after the most careful consideration we are unable to find the hidden spring from which counsel for appellants get sustenance for their contention.

Again in the 12 Nev. 331, cited by appellants, the court says: "If the person proceeded against, in good faith, denies the debt, then the referee cannot make the order."

Where is the denial of anything here? What witnesses were called to prove any fact, but the defendants themselves?

In the 17th N. Y. 482, relied on by appellants, the court says: "It is not enough that the property is found in the hands of the judgment debtor, it must appear also to be his property." What does the undisputed evidence of the judgment debtors in this case show?

*First*—It shows that when the goods were transferred back to McLaughlin and Lockhart from the corporation the accounts were retained by the corporation (abst. 48, 60-1.)

*Second*—It shows that the $2,000 which the court ordered turned over was derived from collections of the accounts retained by the corporation (abst. 64).

*Third*—It appears that the next day after the examination before the referee had begun and before the orders in the cases were made, a meeting of the directors of this corporation was held at the Utah Central Depot 8 o'clock in the morning for the purpose of declaring a dividend of the $2,000, which had been discovered in the hands of Lockhart (abst. 66, 85, 96-7).

Now where are we? The corporation was divested of all its interest, if it ever had any, in the $2,000 in dispute when the dividend was declared. That cannot be gainsaid. The Park City Bank had no claim for their debt against McLaughlin and Lockhart had been paid in full in October by Rice, assignee, turning over the stocks of goods to Dave McLaughlin, receiver of the defunct bank.

In support of our position that the referee or court has the power to make the order for delivery of money or property in the hands of the judgment debtor, or third persons, except when the denial of the ownership of the judgment debtor is made in good faith, which good faith the

referee or court has the right to determine, we cite 2d Freeman on Execution, sec. 405, p. 1309, and in the latter part of the section the author says: "Where conflicting claims exist in good faith the court will rarely make the order, and further on he says, "The better rule, however, is that neither the mere denial of a debt, nor the mere pretense of an adverse claim, will prevent the court from making an order requiring the debt to be paid or the property to be delivered. It must appear that there is a real, instead of a simulated controversy before the court will require the plaintiff to prosecute another action to determine his right to have the property applied to the satisfaction of his judgment."

"That a mere verbal assertion of claim, independent of facts proven, is not the claim of interest meant by sec. 299; that it must be an assertion supported by facts which show that a substantial question can be made to be submitted for adjudication. Bliss's Annotated Code, vol. 2, p. 554. According to this decision, it is not enough to oust the jurisdiction of the judge for a person to merely assert that he owns the property in question or an adverse interest therein; he must adduce some evidence of ownership or interest which will go to show that there is in the matter a substantial question for judicial determination by due process of law." Riddle & Bul. Sup. Proc. p. 463. On pages 464–5 he says: "If the judge, therefore, has jurisdiction of the person and of the subject-matter, or general question as it is called in *Hunt* v. *Hunt*, 72 N. Y. 217, he has jurisdiction to determine the question of substantial dispute; and his order in no case can be void. He may err; he may be as thoroughly wrong as the judge was in *Barnard* v. *Kobbe*, 54 N. Y. 516; still his order is merely erroneous, not void, and must be obeyed or corrected by appeal or review. Any other course would lead to confusion; for it must be conceded that somewhere along the line of evidence the judge has jurisdiction to

decide whether the debtor's right is substantially disputed or not. Then at what point on that line is he ousted of jurisdiction and his order rendered void? What amount of evidence, what degree of proof will turn the scales and make that void which otherwise would be valid or merely erroneous? The inevitable consequence of this position is that a person against whom such an order was made would have to decide for himself the grave question of jurisdiction, and determine whether he should obey or disregard it. The safest and soundest rule is to hold that a judge's order made under sec. 2447 of Code is always valid, provided he has the required jurisdiction of the person and subject-matter, and must be got rid of, if erroneous, by appeal or review, like valid orders generally." See cases cited.

In Burrill on Assignments (5 ed) sec. 110 the author says: "Under the common law of assignments the assignee stands in the place of the assignor and can assert no claim to the property which the assignor might not. The assignment, therefore, does not carry with it to the assignee, the title to property which the assignor had previously transferred in fraud of his creditors for the purpose of hindering, delaying or defrauding them."

In the 8 Am. & Eng. Enc. of Law, p. 856, § 7, the author says: "Transfers in fraud of creditors are according to the weight of the authorities valid between the parties and against all save the creditors; and this doctrine rests on the ground that the court will not allow either party to call his own act fraudulent."

We refer the court to the 8 Am. & Eng. Enc. of Law, p. 1,341, where the author says: "The general principle of law is that in order to make conveyances fraudulent as to creditors and void on that account both grantor and grantee shall have participated in the fraudulent intent. *This rule, however, does not apply to cases of voluntary*

*conveyances or gifts, as the donee is voluntarily obtaining the property without consideration, the courts will not assist him in retaining the subject of the gift against the claims of creditors whom the donor has attempted to defraud by making the gift.*" In support of this the court will notice that decisions are cited from nearly every state in the Union upholding this position.

We submit that the order of the court requiring this stock to be turned over to satisfy plaintiff's judgments was the only order that could be made in the premises. It is proper to order an assignment of stock in this kind of a proceeding. *Collins* v. *Angell,* 14 Pac. Rep. 135; *Pacific Bank* v. *Robinson,* 57 Cal. 520.

In Cook on Stocks and Stockholders (2nd ed) p. 27, section 20*b*. the author says: "A copartnership may of course sell its stock to a corporation and take shares in payment, but if the partnership is in a failing condition at the time of the transfer the creditors of the firm may disregard the sale and levy execution on the property itself."

By the rule thus laid down the creditors of the partnership have an equitable lien on the partnership assets, which lien is not destroyed by a transfer to a corporation; and the cases at bar certainly come within the rule thus enunciated.

KING, J.:

Each of the above-named plaintiffs obtained judgment against the defendants on the 1st day of September, 1893, and instituted proceedings supplemental to execution against the defendants and H. V. Rice, D. C. McLaughlin, and E. C. Williamson; and the court ordered them to appear before a referee "to answer concerning property, moneys, rights, and credits of the said defendants, F. J. McLaughlin and O. C. Lockhart." At the hearing before the referee,

the only witnesses called were those against whom the proceedings were instituted. Their testimony, so far as it is necessary to a decision in this case, was substantially as follows: For about five years prior to June 12, 1893, defendants Lockhart and McLaughlin had been engaged as copartners in a general merchandise business at Park City. On the day last mentioned, their liabilities amounted to $25,000. Their assets consisted of merchandise of the value of $18,000, and book accounts aggregating $15,000. They were indebted to the Park City Bank in the sum of $15,000, and to plaintiffs in the sum of $1,625, and $2,500, respectively. The bank, which was the principal creditor, on the 12th day of June, 1892, passed into the hands of an assignee. It was thought that the failure of the bank might precipitate an attachment, and, because of the stringency in the money market, it was felt that a forced sale of the assets would realize but a small part of their value, and most of the creditors would therefore be unpaid. Hoping to avoid this, a corporation was formed by the copartners, and all of the assets of the copartnership transferred to the new company. It was designed to place the stock of the corporation with the creditors, as security, and to continue the business, push collections, dispose of the goods as rapidly as possible, and apply all the receipts to the discharge of the partnership obligations. The witness said no fraud was intended, but that they acted in good faith, and for the best interests of their creditors. All the stock in the corporation, except four shares, was held by Lockhart and F. J. McLaughlin, who assigned their stock as security to the bank for its claim. Subsequently they executed a writing assigning to plaintiffs and other creditors their stock in the corporation, subject to the lien of the bank. The creditors seemed to approve of the action of the partners in organizing a corporation, and plaintiffs continued to sell merchandise to it, receiving

payment therefor.    Cash dividends were declared by the corporation, and paid to the bank on its claim.

Later on, some of the creditors of the partnership commenced attachment proceedings, and the Symns Utah Grocer Company, one of the plaintiffs, attached a portion of the merchandise in the possession of the corporation. Thereupon the partners concluded, rather than involve the corporation in legal controversies with partnership creditors, that it would be better to make an assignment for the benefit of their creditors.    The corporation was owing but a few hundred dollars.    So, acting upon the advice of their attorneys, the stockholders of the corporation, who were its directors, sold and transferred the merchandise to Lockhart and F. J. McLaughlin; and they immediately executed a deed of assignment conveying all their property, both real and personal, except such as was by the law exempt, to H. V. Rice, for the benefit of their creditors. The bank's claim, amounting to $12,500, was preferred. Immediately upon the assignment being made, representatives of various creditors went to Park City, and threatened to attach the goods in the hands of the assignee; but D. C. McLaughlin,—who had been in the meantime appointed receiver of the bank, upon the death of its assignee,—learning of this fact, insisted upon the assignee's selling the merchandise to him, as the bank's claim had been preferred.    After some negotiations it was agreed that, if the bank would cancel its claim of $12,500, the assignee would convey the merchandise, valued at from twelve to fourteen thousand dollars, to the receiver.    This arrangement was satisfactory to Lockhart and F. J. McLaughlin, and the goods were transferred to the receiver. The treasurer of the corporation, Lockhart, collected about $2,000 from persons to whom merchandise had been sold by the corporation, and at the time of the hearing had it in his possession.    Pending the hearing the directors of

the corporation hastily met, and declared a dividend covering this amount. It appears this was done so that it could be passed to the creditors of Lockhart and F. J. McLaughlin. Williamson, one of the garnishees, testified that in June or July, 1893, Lockhart transferred to him, without consideration, 129 shares of stock, valued at about $1,290, in a building association.

The referee made elaborate findings, and declared that the transfers made by the corporation and by the copartners were fraudulent and void, including the sale of the merchandise to the receiver of the bank, and also declared that said merchandise was subject to the claims of plaintiffs, and ordered that it should be sold to discharge their judgments. Orders were also made commanding the treasurer of the corporation to pay into court the $2,000 above referred to, and requiring Williamson to endorse and assign the stock of the building association to the United States marshal, by whom it was to be sold. The order further stated that the proceeds arising therefrom, together with the $2,000, should be applied to the satisfaction of plaintiffs' judgments. The report and orders of the referee were adopted and approved by the court, and judgments duly entered in conformity therewith. Subsequently, upon motion of defendants, the judgments were set aside by the court; but later, upon plaintiffs' application, the court found, after a submission of the testimony taken by the referee, that the $2,000 in the possession of Lockhart was the property of defendants, and that the stock of the building association was the property of Lockhart; also, that the merchandise conveyed to the receiver was the property of defendants. The court ordered the building stock held by Williamson to be sold, and the $2,000 to be applied in payment of plaintiffs' judgments; and plaintiffs were authorized to commence suits against the receiver for the recovery of the merchan-

dise, or the amount resulting from the sales thereof, and the receiver was required to make no disposition of the moneys arising from sales of goods until "said action can be commenced, and prosecuted to judgment."

The points involved in these cases are the same, and both were brought into this court on a joint record. They will therefore be considered together. The garnishees contend that in supplemental proceedings the court is limited by the statute as to the order which it may enter, and that it was error, in such proceedings, to try the question as to the right of possession and title to property which was not acknowledged to belong to defendants, and that the judgments appealed from are void. Plaintiffs insist that there are no conflicting claims, in good faith, to the property in question, and that there is no real but a simulated controversy regarding its ownership, and therefore the court had jurisdiction to adjudge the property to belong to defendants, and order its application to the discharge of plaintiffs' judgment, without compelling them to litigate the questions involved in another action.

Sections 3455, 3457, and 3458 of the Compiled Laws of Utah provide: "After the issuing or return of an execution against property of the judgment debtor, or of any one of several debtors, in the same judgment, and upon proof by affidavit or otherwise, to the satisfaction of the judge, that any person or corporation has property of such judgment debtor, or is indebted to him in an amount exceeding fifty dollars, the judge may, by an order require such person or corporation, or any officer or member thereof, to appear at a specified time and place before him, or a referee appointed by him, and answer concerning the same. The judge, or referee, may order any property of the judgment debtor not exempt from execution, in the hands of such debtor, or any other person, or due to the judgment debtor, to be applied towards the satisfaction of the judg-

ment. If it appears that a person or corporation, alleged to have property of the judgment debtor, or to be indebted to him, claims an interest in the property adverse to him, or denies the debt, the court or judge may authorize by an order made to that effect, the judgment creditor to institute an action against such person, or corporation for the recovery of such interest or debt; and the court or judge, may by order, forbid a transfer, or other disposition of such interest or debt until an action can be commenced and prosecuted to judgment." It seems clear to us that under this provision the court exceeded its jurisdiction in rendering the judgments above referred to without having the corporation before it, and without granting it a hearing. It is practically saying and deciding that it has no existence, or, if so, that it and any property rights it may possess may be extinguished by means of these proceedings. Without pleadings, except the affidavit upon which the order was issued, grave and important issues of fact respecting property rights and the *bona fides* of transactions of various persons are determined. Without allegations that the transfer of merchandise by the corporation to defendants was fraudulent, and without pleadings declaring that the assignment by defendants for the benefit of their creditors was fraudulently made, these issues of fact are determined. The receiver of the bank testifies that, in good faith, he purchased the goods from the assignee. Without having the bank before it, or the receiver, as such, a judgment is rendered which, in effect, declares the sale fraudulent, and the assignment of stock made by defendants to the bank invalid; and it is no answer to say that Lockhart and F. J. McLaughlin, the principal stockholders of the corporation, were before the court. They had been garnished, not as representatives of the corporation, but in their individual capacity. Nor can it be said that the receiver of the bank was before the

court.   D. C. McLaughlin, as an individual, and not as receiver, was garnished.

How is it possible, in this summary way, without an opportunity to be heard, and in the absence of some of the parties, without issues, for the court or referee to determine the questions of fact which ought to be heard only in regular actions, and perhaps before a jury?   It is clear from the record that "persons and corporations claimed an interest in the property adverse to the judgment debtors."   That being true, the court had no authority to determine the conflicting claims.   And the rule is not different where the property is in the hands of the judgment debtor.   The purpose of the statute referred to is to aid the judgment creditor in discovering property or assets belonging to the judgment debtor, and to secure the application of the same to the satisfaction of his claim, without delay or an independent suit; and it would be a gross perversion of the statute to hold that in supplemental proceedings the court can exercise all the powers of a court of equity, and pass upon questions of fact, the determination of which, under our system of jurisprudence, rests with a jury.   Under a similar statute, the supreme court of Nevada state:   "When these various sections are construed together, it seems perfectly plain that the judge or referee can only order property to be applied to the satisfaction of the judgment when the title thereto is clear and undisputed.   *   *   *   If there is any dispute as to the ownership of the property, or if the person proceeded against in good faith denies the debt, neither the judge nor the referee has any power or authority whatever, in these proceedings, to decide the disputed questions, and order the property delivered, or money adjudged to be due to be paid over, in satisfaction of the judgment." *Hagerman* v. *Tong Lee*, 12 Nev. 336.   But we are referred

28

to the second volume of Freeman on Excutions (sec. 405), where it is stated that " neither the mere denial of a debt, nor mere pretense of an adverse claim, will prevent the court from making an order requiring the debt to be paid, or the property delivered." And it is argued that the adverse claims of the receiver, Williamson, and the corporation, to the property in controversy, are mere pretenses.

The facts before us do not bring these cases within this rule. While there are disclosures in the record before us which do not relieve the transactions from suspicions of legal, if not moral, fraud, yet we cannot say that the adverse claims to such property are mere pretenses. Of course, where it is clearly apparent to the court that there is a simulated controversy, and that there is absolutely no foundation for an adverse claim to the property in controversy, and where the assertion of such a claim would be so clearly a pretense and evidence of fraud as to be tantamount to a disclaimer of interest, then the court can order its application to the judgment creditors' demand. We adopted this statute from California, and the supreme court of that state, in construing its provisions, say: " Under a similar statute in New York, the same ruling was made in *Town* v. *Insurance Co.*, 4 Bosw. 683, and the court held ' that if property was in possession of the garnishee, claiming title to it, no matter how fraudulent the transfer, no order can be made to compel him to deliver the property, and therefore no question can be put to the debtor or a witness to discover or prove fraud. * * * The remedy of the creditor is by direct action against the fraudulent assignee, when the good faith of the assignment is in issue.' There can be no question but that this is the proper construction of the statute, and it results that when the garnishees explicitly denied, in their examination, their indebtedness to the judgment debtor,

neither the court nor the referee had the power to compel them to pay over to the sheriff the amount of the alleged indebtedness." *Hartman* v. *Olvara,* 51 Cal. 501; *Rodman* v. *Henry,* 17 N. Y. 482; *Sherwood* v. *Railway Co.,* 12 How. Prac. 136; *Teller* v. *Randall,* 40 Barb. 242; *Mc-Dowell* v. *Bell,* 86 Cal. 615, 25 Pac. 128; *Bank* v. *Pugsley,* 47 N. Y., 368.

But it is claimed by plaintiffs that there can be no dispute regarding the building stock transferred by Lockhart to Williamson.   We have no hesitancy in saying that the record seems to establish that the transfer was fraudulent; and it is held by many courts that an assignee has no interest in the property of the assignor previously conveyed, where it was fraudulently done.   We do not desire to pass upon this question, or to determine what, if any, rights the assignee of Lockhart and McLaughlin has in this building stock.   We think, whatever interests either of the parties to these proceedings may have therein, they should be determined in another form of action.   If Lockhart had any interest in the stock at the time of executing the deed of assignment to Rice, such interest passed to the assignee, providing the deed of assignment is valid; and the validity of this assignment, we think, cannot be determined in these supplemental proceedings.

Respondents contend that, even under the views herein announced, the judgment of the court as to the $2,000 in the hands of Lockhart was proper; that the stock of defendants in the corporation was assigned to the bank, but that prior to the general assignment by defendants this stock was assigned to plaintiffs, subject to the bank's claim, but that the receiver of the bank took the goods in full payment of defendant's demands, and therefore they are entitled to the stock, and consequently to the money which is a dividend thereon.

There are two objections to this contention: *First.*

Plaintiffs base their right to the $2,000 upon the judg-ment of the court, and not in virtue of any interest in the corporation stock. In other words, they repudiate the assignment, and do not claim under it. *Second.* The stock was assigned subject to the bank's claim, for the benefit of plaintiffs and other creditors. When this stock was fully discharged from the lien of the bank, it was subject to the claim of other creditors, including the plaintiffs, but the record nowhere indicates the proportion to which each creditor is entitled; and, even if the court had power to partition the stock and prorate the dividend, there was no evidence before it upon which to base such action. Without expressing any opinion as to the interest acquired in said stock by plaintiffs and other creditors of defend-ants, we think there was a sufficient "adverse claim" by the assignee, Rice, and the creditors named in the assign-ment, to preclude the court from making the order in the premises. If the stock passed to plaintiffs and other creditors by the special assignment, they were entitled to the dividends, if they recognize the validity of the trans-fer. If they do not recognize its validity, then the stock passes to the assignee, Rice, by the general assignment; and, if it is valid, he would be entitled to the dividends for disbursement to defendant's creditors. We think the court erred in entering the judgments appealed from. Each of the judgments is reversed, and the cases remanded, with directions for the lower court to enter such orders, in conformity with the views herein expressed, as may be proper.

BARTCH, J., concurs.