2018 UT App 179

## THE UTAH COURT OF APPEALS

YAN ROSS AND RANDI WAGNER,
Appellees,
*v.*
MICHAEL BARNETT,
Appellant.

Opinion
No. 20160652-CA
Filed September 20, 2018

Third District Court, Salt Lake Department
The Honorable John Paul Kennedy and Ryan M. Harris
No. 070915820

Douglas R. Short, Attorney for Appellant

John H. Bogart, Attorney for Appellees

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

HAGEN, Judge:

¶1 Appellant Michael Barnett asks this court to review fourteen issues arising from supplemental proceedings in which attorney Douglas R. Short represented Barnett as an intervenor. In the underlying case, plaintiffs Yan Ross and Randi Wagner obtained a judgment against defendant Global Fraud Solutions (GFS). When Ross and Wagner sought a writ of execution against GFS's assets, GFS claimed that some of the assets were owned by its general manager, Barnett, and thus were not subject to execution to satisfy the judgment against GFS. Barnett filed a motion to intervene and a motion to quash the writ of execution. The district court granted the motion to intervene. Following an evidentiary hearing on the motion to quash, the district court found that Barnett was not credible and that the

assets were the property of GFS. The district court denied the motion to quash and enjoined Barnett from dissipating the assets. The court made those rulings in September 2008.

¶2     During the ten years that followed, Barnett and Short continually attacked those rulings. Among other things, Barnett denied intervening as a party in the case, challenged the court's jurisdiction, disputed the court's recollection of its September 2008 rulings, ignored the court's decisions by raising the same rejected arguments over and over again, and filed several appeals that he failed to prosecute.

¶3     We have appellate jurisdiction over only a limited number of issues raised on appeal. As to those issues, we reject Barnett's challenges and conclude that they are neither grounded in fact nor on a good faith legal argument. Accordingly, we affirm the district court's ruling and remand for an award of Ross and Wagner's costs and attorney fees incurred in defending this appeal.

BACKGROUND[1]

¶4     In 2007, Ross and Wagner sued GFS for failure to repay an unsecured loan, or debenture, and for breach of contract. With respect to the first cause of action concerning the debenture, the district court granted partial summary judgment in favor of Ross

---

1. This condensed summary of the proceedings below does not do justice to the voluminous record in this case. Over the past ten years, Barnett has inundated the district court with repetitive filings, attempting to resurrect issues previously decided. In addition, Barnett has filed seven different appeals, most of which were dismissed based on his refusal to comply with this court's rules.

and Wagner, awarding them the unpaid principal of $47,000, plus interest, costs, and attorney fees.

¶5    Ross and Wagner sought a writ of execution against GFS's "tangible and intangible business assets" to satisfy the judgment. GFS objected, claiming that certain assets were exempt from execution because they were "owned by another person." One asset in particular was at issue—a bank account in the name of The Institute of Fraud Risk Management (the TIFRM Account). At a hearing on September 15, 2008, the district court found that the TIFRM Account was the property of GFS and enjoined dissipation of the account. As to GFS's objection to the writ of execution, the district court continued the evidentiary hearing to September 25, 2008.

¶6    Before the evidentiary hearing, Barnett, the general manager of GFS, filed a motion to intervene. Barnett also filed a motion to quash the writ of execution, claiming that he, not GFS, owned the assets subject to the writ.

¶7    At the evidentiary hearing on September 25, 2008, the district court granted Barnett's motion to intervene. After hearing witness testimony, reviewing the exhibits submitted, and considering counsels' arguments, the district court ruled "that the Assets were and are the property of Defendant GFS and were not and are not owned by Intervenor Barnett." The court's ruling was based on a finding that Barnett's testimony asserting ownership of the assets "was evasive and inconsistent and not credible." Additionally, the court made the following findings of fact:

> [T]he Court finds that the asset in this case is the asset of GFS based upon the statements by Mr. Barnett to the effect that he is GFS and based on other indications that are set forth in the exhibits that were introduced today including the sworn

> statement filed with the Court, including the repeated statements in the various documents and emails that have been presented.

The court continued the injunction issued on September 15 and further enjoined Barnett from diverting funds from the TIFRM Account.

¶8 Shortly thereafter, Ross and Wagner filed a motion for a permanent injunction and a finding of contempt against Barnett, claiming, among other things, that he was dissipating GFS's assets. Barnett's attorney withdrew as counsel, and Short entered a "special appearance" on behalf of Barnett. In addition to objecting to Ross and Wagner's pending motion, Short moved—yet again—to quash the writ of execution on the grounds that the assets belonged to Barnett personally.

¶9 On January 27, 2009, the district court held a hearing at which Barnett challenged whether the court had jurisdiction over him and whether the assets subject to execution belonged to him or GFS. The court ruled that "Intervenor Barnett is a party in this action and that the Court has jurisdiction over him, as a result of the prior formal Motion for Intervention filed in this action by Mr. Barnett through his previous attorney." The court also reiterated its finding from the prior evidentiary hearing that the assets subject to execution are the property of GFS, not Barnett.

¶10 Ross and Wagner prepared a written order memorializing the January 27, 2009 ruling, but it was not entered until June 6, 2012 (the June 2012 Order).[2] Two weeks later, on June 20, 2012,

---

2. Barnett objected to the proposed June 2012 Order, claiming that the court had not made any substantive rulings during the January 27, 2009 hearing. Before the court could rule on Barnett's

(continued…)

Barnett filed a motion to reconsider or amend the June 2012 Order (the June 2012 Motion). The next day, Barnett filed a motion for clarification, asking whether the court intended the June 2012 Order to be final and appealable. Neither side ever filed a notice to submit these motions for decision.

¶11 On December 18, 2012, the district court scheduled a hearing on all pending motions. Before the hearing, Ross and Wagner filed a memorandum in opposition to Barnett's second motion to quash the writ of execution, which they had filed on January 27, 2009. Ross and Wagner filed a notice to submit Barnett's motion for decision, after which Barnett moved to strike the opposition as untimely. Barnett also filed a motion to strike the June 2012 Order on the grounds that it had been entered by the court before considering Barnett's objections. No notice to submit that motion for decision was filed.

¶12 At the hearing on all pending motions held on February 7, 2013, the court denied Barnett's motion to quash the writ of execution as well as his motion to strike Ross and Wagner's opposition. In a subsequent written order entered on May 6, 2013 (the May 2013 Order), the court reiterated that it had

_____

(…continued)
objection, however, Barnett filed a series of motions aimed at disqualifying the district judge. Those motions were referred to other judges for decision, along with a motion for rule 11 sanctions against Barnett filed by Ross and Wagner. The district court deferred further action in this case until those matters were decided. The order granting rule 11 sanctions was entered on February 10, 2012. The following month, the court "directed the parties to submit any outstanding unsigned orders." At that point, Ross and Wagner resubmitted the written order memorializing the January 2009 hearing and the court entered the order without objection.

previously found, on September 15, 2008, that the assets belonged to GFS and had later reaffirmed that finding on numerous occasions, including the September 25, 2008 hearing, the January 27, 2009 hearing, and in the June 2012 Order. The court concluded that Barnett's arguments "are a rehashing of arguments previously considered and rejected by this Court" and "[n]o good reason was set out for reconsideration."[3]

¶13 On May 31, 2013, Barnett filed a rule 52 motion to amend the May 2013 Order. In his supporting memorandum, Barnett again challenged the district court's finding that GFS owned the assets at issue "because any such purported finding of ownership lacks any factual evidentiary support in the record." He also reiterated his argument that the June 2012 Order was improperly entered over his objections.[4]

¶14 Following a hearing, the district court signed a minute entry order dated August 16, 2013, denying Barnett's motion and citing him for contempt. The court reiterated its earlier rulings, including that (1) the "Court has had and continues to have personal jurisdiction over" Barnett, who, "through his personal appearance and through counsel, submitted to the jurisdiction of the Court in 2008"; (2) the court "has subject matter jurisdiction over this matter" because it "has inherent authority to enforce its orders"; and (3) the court had ruled as far back as 2008 that the challenged assets belonged to GFS.

---

3. The court also granted summary judgment in favor of Ross and Wagner on their second cause of action for breach of contract. A final order was entered on March 26, 2013, awarding them $20,000, along with interest, costs, and attorney fees.

4. At this point, another round of motions to disqualify the district court judge ensued, resulting in additional delays.

¶15    Undeterred by this sixth adverse ruling on the ownership of the assets, Barnett filed another series of motions asking for, among other things, an amended judgment or a new trial. On January 24, 2014, the district court struck the filings as "riddled with 'redundant, immaterial, impertinent or scandalous matter.'" (Quoting Utah R. Civ. P. 10(h).) In addition, the court ruled that "because the arguments raised in Barnett's Rule 59 Motion have already been raised and rejected by the Court previously, the Court sees no reason to reconsider its prior rulings."[5]

¶16    Several years later, after the original judge retired and a different judge had been assigned to the case, Barnett informed the court that the June 2012 Motion was still outstanding. The district court set a briefing schedule on the June 2012 Motion and ultimately denied it in an order signed June 21, 2016 (the 2016 Ruling). The district court ruled:

> By letting the Motion lie fallow for some four years, Barnett essentially asks this Court to sit as an appellate court and review a cold record for

---

5. Again, the proceedings were delayed. Ross and Wagner filed a motion to reduce the previously ordered rule 11 sanctions to judgment. When neither Barnett nor his attorney, Short, appeared at the order to show cause hearing, the district court held both in contempt. This touched off another series of motions, which included a renewed effort by Barnett to disqualify the district court judge as well as three motions by Ross and Wagner seeking sanctions against Short. Proceedings were stayed until the presiding judge determined that the motion to disqualify was "unsupported by credible evidence and based largely on adverse rulings and decisions." Once the stay was lifted, the district court granted Ross and Wagner's motions for sanctions against Short.

alleged errors of law made by a different district court judge. In the Court's view, this is the proper role of an appellate court on application through a timely notice of appeal; it is not the proper role of this Court on an obsolete motion filed four years ago under Rule 52 or Rule 59 . . . . The considerable time that has elapsed between when the motion was filed and now renders the Motion stale. The proceedings that have transpired in the interim reinforce the point, and further militate against considering the Motion nearly four years after it was filed.

Among other things, the district court noted that Barnett had unreasonably delayed in submitting the June 2012 Motion for decision, had effectively challenged the rulings in the June 2012 Order through subsequent motions that the predecessor judge rejected, and had filed multiple appeals purporting to challenge the predecessor judge's rulings, all of which were dismissed. The court recognized its discretion to reconsider orders entered by a previous judge, but it declined "to exercise its discretion to undertake that reconsideration."

¶17　Barnett and Short filed this appeal on July 20, 2016.

ANALYSIS

I. Appellate Jurisdiction

¶18　Barnett attempts to raise fourteen issues relating to myriad rulings made throughout the protracted history of this case. We have jurisdiction to review only those rulings from which a timely notice of appeal was filed. *Reisbeck v. HCA Health Services of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447 ("Failure to file a timely notice of appeal deprives this court of jurisdiction over the appeal."). An appeal "shall be filed with the clerk of the trial

court within 30 days after the date of entry of the judgment or order appealed from." Utah R. App. P. 4(a). "It is axiomatic in this jurisdiction that failure to timely perfect an appeal is a jurisdictional failure requiring dismissal of the appeal." *A.S. v. R.S.*, 2017 UT 77, ¶ 35 n.12, 416 P.3d 465 (quotation simplified).

¶19 Here, the notice of appeal was filed on July 20, 2016. Only a single order falls within the preceding thirty-day period—the 2016 Ruling issued on June 21, 2016. Two of the fourteen issues on appeal arise from the 2016 Ruling. In issues one and three, Barnett challenges the merits of the 2016 Ruling, arguing that the district court improperly raised "staleness sua sponte" and abused its discretion in refusing "to entertain challenges to the alleged mistakes by its predecessor." Because Barnett timely appealed these two issues within thirty days of that ruling, we have jurisdiction to address those issues.

¶20 All of the remaining issues relate to district court rulings made before 2016, for which the time to file a notice of appeal has long since run. Nonetheless, Barnett claims that his time to file a notice of appeal was not triggered by these earlier rulings, because they were not final, appealable judgments.[6] But "[t]he

___

6. We note that Ross and Wagner have argued, and the district court agreed, that the prior rulings were final and appealable no later than March 26, 2013, when partial judgment was entered on Ross and Wagner's only remaining cause of action. But the underlying action against GFS and "the subsequent action seeking enforcement of that judgment are separate proceedings, each resulting in separate judgments that are then individually subject to the rules of appellate procedure concerning appeals." *Cheves v. Williams*, 1999 UT 86, ¶ 52, 993 P.2d 191. Therefore, we agree with Barnett that the March 26, 2013 partial judgment is irrelevant to when the prior rulings in the supplemental proceedings became final and appealable.

final judgment rule does not preclude review of postjudgment orders." *Cahoon v. Cahoon*, 641 P.2d 140, 142 (Utah 1982). Instead, postjudgment orders "are independently subject to the test of finality, according to their own substance and effect." *Id.* "Where the effect of a postjudgment order is to determine substantial rights and end the litigation regarding a specific issue in a [supplemental] proceeding, the order will be a final order for purposes of appeal." *Colleli v. Colleli*, 2004 UT App 318U, para. 2 (per curiam).

¶21 During the course of these supplemental proceedings, the district court issued multiple orders relating to the issues now on appeal. Barnett has not undertaken an analysis of the substance and effect of the district court's earlier orders, instead claiming that Ross and Wagner bear "the burden to prove the existence of a final, appealable, supplemental order/judgment that was not timely appealed." But "[w]hen a jurisdictional question arises, the burden to establish it rests upon the party asserting that jurisdiction exists." *Thompson v. Jackson*, 743 P.2d 1230, 1232 n.2 (Utah Ct. App. 1987) (per curiam). Barnett has not carried that burden here.

¶22 We need not analyze the substance and effect of each of the earlier orders, because we conclude that the time for filing a notice of appeal on issues four through fourteen began to run no later than January 24, 2014.[7] In a signed minute order dated August 16, 2013, the court rejected Barnett's challenges to subject matter and personal jurisdiction (issues four and five); reaffirmed its rulings made at the September 25, 2008 hearing

---

7. Issue two asks us to remand to the district court for a determination of whether the June 2012 Order was final and appealable. Because we conclude that the time for filing a notice of appeal has long since run on all issues relating to the June 2012 Order, issue two is moot.

(issues six, seven, eight, and nine); and held Barnett in contempt (issues ten, eleven, twelve, and fourteen). The denial of Barnett's motion to disqualify the judge from making those rulings (issue eleven) also became appealable at that time. *See Johnson v. Johnson*, 2004 UT App 13U, para. 4 (per curiam) (explaining that a motion to disqualify a judge from a pending matter becomes appealable once a final and appealable order is issued on that pending matter). The August 16, 2013 order determined the substantial rights of the parties and resolved all issues at stake in the supplemental proceedings. *See Colleli*, 2004 UT App 318U, para. 2. Accordingly, by its substance and effect, it was a final, appealable order.

¶23 Barnett filed a timely rule 59 motion for an amended judgment or new trial, thereby tolling the time for appeal until the court entered an order on the motion. *See* Utah R. Civ. P. 59; Utah R. App. P. 4(b)(1)(C). On January 24, 2014, the district court struck the rule 59 motion for failure to comply with the Utah Rules of Civil Procedure but ruled that, "even if the Court were to consider the motion, Barnett would not be entitled to relief." The order did not contemplate any further action on these issues and expressly stated, "No additional order is necessary." When the court issued the order on the rule 59 motion, the thirty-day period for filing a notice of appeal began to run and would have expired on February 24, 2014. *See B.A.M. Dev., LLC v. Salt Lake County*, 2012 UT 26, ¶ 10, 282 P.3d 41.

¶24 The notice of appeal filed on July 20, 2016, was untimely as to issues two and four through fourteen.[8] But in issue four,

---

8. Barnett did file a notice of appeal within the thirty day period, but that was a different appeal from the one now before us. On February 21, 2014, Barnett filed a timely notice of appeal from the January 24, 2014 order, "in an abundance of caution to preserve any and all rights of appeal" in the event that the order

(continued…)

Barnett asserts that the district court lacked subject matter jurisdiction over the ownership dispute in these supplemental proceedings. "Because subject matter jurisdiction goes to the heart of a court's authority to hear a case, it is not subject to waiver and may be raised at any time, even if first raised on appeal." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 (quotation simplified). Accordingly, we address that threshold issue first.

## II. Subject Matter Jurisdiction

¶25    Barnett contends that the district court lacked subject matter jurisdiction to determine who owned the assets subject to execution. "We review jurisdictional issues for correctness." *In re A.J.B.*, 2017 UT App 237, ¶ 12, 414 P.3d 552.

¶26    This appeal arises from supplemental proceedings to enforce a judgment against GFS. There is no dispute that the district court had subject matter jurisdiction over the causes of action brought by Ross and Wagner against GFS, as it was a civil matter within the general jurisdiction of the district court. *See* Utah Const. art. VIII, § 5; Utah Code Ann. § 78A-5-102(1) (LexisNexis 2012). In the underlying action, the court granted

---

(…continued)

was determined to be final and appealable. But Barnett failed to perfect the appeal by filing a timely docketing statement. After giving Barnett two additional opportunities to file a docketing statement and warning that failure to do so would result in the case being submitted for dismissal, this court dismissed the appeal pursuant to rule 3(a). *See* Utah R. App. P. 3(a) ("Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate, which may include dismissal of the appeal[.]").

partial summary judgment for Ross and Wagner and entered judgment against GFS.

¶27 The proceedings at issue in this case began when Ross and Wagner sought a writ of execution on that judgment. District court judges have subject matter jurisdiction to "issue all extraordinary writs and other writs necessary to carry into effect their orders, judgments, and decrees." Utah Code Ann. § 78A-5-102(2); *see also Mardanlou v. Ghaffarian*, 2015 UT App 128, ¶ 19, 351 P.3d 114 ("District courts possess jurisdiction to enforce a final judgment."). Plainly, the district court had subject matter jurisdiction over these supplemental proceedings involving a writ of execution.

¶28 Nevertheless, Barnett claims that the court lacked subject matter jurisdiction "to adjudicate ownership disputes involving non-parties." The most recent case Barnett cites for this proposition is *Cleverly v. District Court*, 39 P.2d 748 (Utah 1935), which noted, "[W]here an interest is claimed in the property by a party not a party to the record or proceedings, . . . the court in supplementary proceedings is without jurisdiction to determine the conflicting claims." *Id.* at 751 (citing *Wallace, Smuin & Co. v. McLaughlin*, 43 P. 109, 111 (Utah 1895)). The court explained that supplementary proceedings "are not well adapted to litigate conflicting claims to property nor to determine disputed questions of fact, particularly where third parties claim an interest in the property." *Id.* The court questioned whether it was possible, "in this summary way, without an opportunity to be heard, and in the absence of some of the parties, without issues, for the court or referee to determine the questions of fact which ought to be heard only in regular actions, and perhaps before a jury." *McLaughlin*, 43 P. at 111.

¶29 We question whether this legal proposition survived the adoption of the Utah Rules of Civil Procedure. Those rules specifically provide a mechanism by which a third person can

assert a claim to property subject to a writ. Utah R. Civ. P. 64(e)(1). Under rule 64(e)(1), "[a]ny person claiming an interest in the property [that is the subject of a writ] has the same rights and obligations as the [party against whom judgment has been entered] with respect to the writ." "If a person claiming an interest in the property is named by the plaintiff and served with the writ and accompanying papers, then that person shall exercise those rights and obligations within the same time allowed the party against whom judgment has been entered." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 33, 408 P.3d 296 (quotation simplified).

¶30   In any event, Barnett's claim of ownership is readily distinguishable from the type of conflicting claims that *Cleverly* and *McLaughlin* considered ill-suited for resolution in a supplemental proceeding. Most importantly, this case does not involve a nonparty without an opportunity to be heard. The district court granted Barnett's motion to intervene, making Barnett a party to the supplemental proceedings with the same rights as the original parties. *See* 59 Am. Jur. 2d *Parties* § 224 (2018). Since becoming a party, Barnett had notice and a right to be heard at every stage in the proceedings.

¶31   In addition, this case does not involve an actual controversy between Barnett and GFS that might best be resolved in a separate lawsuit. Instead, the district court found that, in effect, "[Barnett] is GFS." Even the cases on which Barnett relies recognize that

> where it is clearly apparent to the court that there is a simulated controversy, and that there is absolutely no foundation for an adverse claim to the property in controversy, and where the assertion of such a claim would be so clearly a pretense and evidence of fraud as to be tantamount to a disclaimer of interest, then the

court can order its application to the judgment creditors' demand.

*McLaughlin*, 43 P. at 111. Here, the court was not asked to litigate claims between Barnett and GFS but only to determine whether Barnett's claim of ownership was mere pretense.

¶32    Given that Barnett elected to intervene in this case and the district court granted his motion to do so, we have no difficulty determining that the court's subject matter jurisdiction over these supplemental proceedings encompassed the authority to decide Barnett's adverse claim.

### III. The 2016 Ruling

¶33    As previously noted, the notice of appeal was timely with respect to only the 2016 Ruling. Two of the issues raised on appeal relate to this ruling. First, Barnett argues that the district court erred when it raised a "staleness" issue sua sponte. Second, Barnett argues that the district court "abused its discretion by refusing to entertain challenges to alleged mistakes by its predecessor." We construe the 2016 Ruling as denying reconsideration of earlier rulings made by the originally assigned judge. "We review a district court's decision to reconsider an earlier decision for an abuse of discretion." *Jordan Constr., Inc. v. Federal Nat'l Mortgage Ass'n*, 2017 UT 28, ¶ 22, 408 P.3d 296.

¶34    First, in denying the June 2012 Motion, the district court concluded that "the Motion has been rendered stale by the unreasonable delay in submitting it for decision, combined with the interim rulings by [the predecessor judge] and the appellate courts." Barnett claims that Ross and Wagner never raised this "staleness" issue and that "this surprise ruling unconstitutionally denied Barnett his due process right to notice and the opportunity to be heard thereon, and deprived him of a

fair hearing before a fair, impartial tribunal since the court was basically ruling favorably on its own argument."

¶35 Although Ross and Wagner may not have used the term "stale" in their opposition to the June 2012 Motion, they raised each of the arguments underlying the court's decision. The court based its conclusion that the June 2012 Motion was "stale" or "obsolete" on several factors, including that Barnett had unreasonably delayed in submitting the motion for decision and that the same issues raised in the motion had been raised and ruled upon as part of subsequent motions. In opposition to the June 2012 Motion, Ross and Wagner argued, among other things, that the motion was "too late" and that "all of the arguments have been raised in previous papers and decided against Barnett in multiple orders." Barnett had ample notice of these arguments and opportunity to respond.

¶36 Second, Barnett argues that the district court refused to address the June 2012 Motion on the merits based on the mistaken premise that it would be acting as an appellate court and reviewing the rulings of its predecessor. To the contrary, the district court expressly recognized that "it has the discretion to reconsider orders entered by a judge who previously managed this same calendar." However, the court declined "to exercise its discretion to undertake that reconsideration."

¶37 The district court acted well within its discretion in declining to reach the merits of the June 2012 Motion. Although there was no ruling specifically on the June 2012 Motion, Barnett raised the same arguments in subsequent motions and those arguments were rejected by the predecessor judge. As the district court noted, the predecessor judge entered the May 2013 Order that reiterated the findings made in the June 2012 Order. Barnett filed a motion to amend in which he "assailed the common determinations between the May 2013 Order and the June 2012 Order, and specifically challenged the propriety of the

June 2012 Order." In August 2013, the court "expressly rejected Barnett's arguments regarding the June 2012 Order." As a result, the predecessor judge "more or less did deny" the June 2012 Motion. Because the issues raised in the June 2012 Motion had already been considered and rejected, Barnett was, in effect, asking the court to reconsider the prior ruling.

¶38    "Whether to reconsider a prior ruling is ordinarily within the sound discretion of the district court[.]" *Colony Ins. Co. v. Human Ensemble, LLC*, 2013 UT App 68, ¶ 6, 299 P.3d 1149. However, there are three situations in which the court is required "to reconsider a matter: (1) when there has been an intervening change of authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Blackmore v. L & D Dev. Inc.*, 2016 UT App 198, ¶ 31, 382 P.3d 655 (quotation simplified). Barnett recognizes that there has been no intervening change in the law or the discovery of new evidence, but he argues that the district court had a duty to revisit the prior decisions because they were clearly erroneous and would work a manifest injustice.

¶39    Barnett gives three examples of "plain error" relating to the June 2012 Order.[9] He argues that the predecessor judge disregarded his lack of subject matter jurisdiction; mistakenly believed that he had personal jurisdiction over Barnett; and relied on his "flawed personal recollections of what happened in September 2008, rather than simply read[ing] the transcripts," forcing Barnett and Short to "repeatedly defend against frivolous claims [that] they have not complied with mythical orders." Because we have already rejected Barnett's challenges to the

---

9. Barnett also argues plain error concerning the order on rule 11 sanctions, but that ruling was not timely appealed and is therefore not before the court.

district court's subject matter and personal jurisdiction, he cannot establish plain error in that regard.

¶40     As to the claim that the district court mistakenly recalled its earlier rulings and held Barnett in contempt of a "mythical order," the record does not support this assertion. The minute entry and transcripts of the hearing on September 15, 2008, reflect that the district court enjoined the removal or transfer of funds from the TIFRM Account. The transcript from the hearing on September 25, 2008, includes express findings that Barnett's testimony was not credible and that the TIFRM Account was the property of GFS. The court ruled that it would "extend that [September 15] injunction" and "further enjoin any additional expenditure of funds." Barnett's assertion that no such rulings were made is yet another attempt to rewrite the history of this case. Because Barnett failed to establish plain error that would work a manifest injustice, the district court was not required to reconsider the prior ruling on the issues raised in the June 2012 Motion.

¶41     The circumstances of this case strongly militated against reconsideration. As the district court found, Barnett unreasonably delayed seeking a ruling on the June 2012 Motion. We agree with the district court's assessment that it would be unfair and a poor use of judicial resources to allow a party to "lie in the weeds for four years and then reactivate a stale motion to reconsider once a different judge is managing the docket." In addition, Barnett failed to file a timely appeal from either the September 2008 or the June 2012 Order. Both the unreasonable delay and the failure to seek timely interlocutory review of the challenged rulings weigh against reconsidering them. The district court properly exercised its discretion in declining to reach the merits of the June 2012 Order, and Barnett has established no basis for disturbing that decision.

IV. Attorney Fees

¶42 Ross and Wagner seek attorney fees on appeal. Under rule 33 of the Utah Rules of Appellate Procedure, if the court determines an appeal "is either frivolous or for delay, it shall award just damages, which may include single or double costs, as defined in Rule 34, and/or reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). A frivolous appeal "is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). An appeal "interposed for the purpose of delay is one interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal." *Id.*

¶43 We conclude that this appeal is frivolous and interposed for the purpose of delay. Barnett has made no attempt to show how his notice of appeal was timely as to the majority of rulings challenged on appeal and has made no good-faith argument as to why we might exercise appellate jurisdiction over those issues. Moreover, the challenges to the 2016 Ruling distort the record and are yet another attempt to relitigate issues long since decided. The central issues in this case were decided in September 2008 when the district court found that the assets were the property of GFS, denied the motion to quash the writ of execution, and enjoined Barnett from dissipating the assets. The ten years of litigation since that time, including the present appeal, are a blatant attempt to delay enforcement of those rulings by repeatedly raising the same challenges and refusing to accept the court's rejection of those arguments.

¶44 We grant Ross and Wagner their reasonable costs and attorney fees on appeal. Because we find that the abusive litigation strategy in this case is attributable to counsel, we order that the fees and costs be paid by Short. *See id.* R. 33(a) (providing that this "court may order that the damages be paid

by the party or by the party's attorney"). We remand to the district court to calculate the reasonable amount of attorney fees and costs incurred by Ross and Wagner in connection with this appeal.

CONCLUSION

¶45 We reject Barnett's challenges to the district court's subject matter jurisdiction. Apart from this jurisdictional issue, we have appellate jurisdiction over only Barnett's challenge to the 2016 Ruling, and that ruling was well within the district court's discretion. Because we conclude that this appeal was frivolous and for the purposes of delay, we order Short to pay Ross and Wagner's reasonable costs and attorney fees incurred on appeal and remand to the district court to calculate the amount of the award.

_____