2025 UT App 72

# THE UTAH COURT OF APPEALS

STEVEN K. BEVERLIN,
Appellee,
*v.*
GAIL W. BEVERLIN,
Appellant.

Opinion
No. 20230597-CA
Filed May 22, 2025

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 214900271

Charles R. Ahlstrom, Attorney for Appellant

Julie J. Nelson, Attorney for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

OLIVER, Judge:

¶1     After a thirty-three-year marriage, Steven K. Beverlin filed for divorce from his wife, Gail W. Beverlin. The parties eventually went to trial because they were unable to resolve the terms of their divorce. Gail[1] appeals the district court's divorce decree, alleging the court abused its discretion in both its alimony determination and property division, and should have awarded her attorney fees. For the reasons set forth below, we affirm.

---

1. Because the parties share the same last name, we refer to them by their first names for clarity, with no disrespect intended.

BACKGROUND

¶2      Steven and Gail met while they were students in the same master's degree program. They married in 1988 after graduation and had four children. They separated in September 2020, and Steven filed for divorce in February 2021.

¶3      During the marriage, Steven worked for the federal government and had a more stable and lucrative employment history than Gail, who devoted considerable time to raising the parties' children and caring for her elderly mother. When the parties separated, Steven worked for the U.S. Forest Service and earned approximately $144,000 per year, Gail worked for the Internal Revenue Service (the IRS) and earned an annual salary of $26,125. Steven applied to retire from his job in April 2021 and officially retired on May 1, 2021, at the age of fifty-eight. When she learned Steven planned to retire, Gail sought to enjoin him from retiring, but the district court denied her request because it did not "find irreparable harm." However, the court noted that it could "impute [Steven's] full time salary if the court finds he is voluntarily unemployed or underemployed." After retiring, Steven received a pension from the federal government with a net amount of approximately $4,000 per month.

¶4      The case came before the district court for a trial in September 2022. By then Gail's annual income had significantly increased because she had been able to work substantial amounts of overtime with the IRS due to a COVID-19 backlog. Gail submitted a financial declaration to the court that indicated she had a net monthly income of $3,376, including overtime pay. The district court adopted the number in Gail's financial declaration as Gail's income, including the overtime pay.[2]

---

2. Although Steven called an expert witness to testify that Gail could earn more, the district court rejected the expert's theory

(continued…)

¶5    Gail requested that the district court impute $144,000 in income to Steven, the same amount he made before he retired. The court determined that Steven was underemployed because he retired when he was fifty-eight years old, and it found the timing of his retirement problematic, but the court ultimately declined to impute Steven's full preretirement salary because Gail presented no evidence to the court that Steven could still earn his preretirement salary. Instead, the court imputed an annual salary of $60,000 and estimated that this salary would net Steven $3,750 per month. This salary imputation was added to the amount Steven received from his pension—he received $2,000 of the $4,000, with Gail receiving the rest, *see infra* ¶ 7—making his net monthly income $5,750 per month.

¶6    The district court also adopted the monthly expenses that Gail presented in the amount of $5,749 and found that she had a monthly shortfall of $373 because her net monthly income was $5,376, with $3,376 coming from her wages from her employment with the IRS and $2,000 coming from Steven's pension. After factoring in Steven's fault for the divorce and that Gail's gas and travel expenses may rise, the district court awarded Gail $500 per month in alimony.

¶7    Because both Gail and Steven had been federal employees, they each had federal retirement accounts. The district court awarded Gail and Steven their equitable share of the other's

---

because Gail lacked essential training required to be employed in the field of her education and her age made it difficult for her to obtain such training.

pension,[3] and their respective Thrift Savings Plans[4] (TSP) were divided equally, according to their balances on September 27, 2022.

¶8      The district court awarded both Gail and Steven a one-half interest in the marital home. Gail was allowed to remain in the home if she was able to refinance it within ninety days and pay Steven his share of the equity, or she could sell the home and divide the equity with Steven minus several offsets that he owed to her.

¶9      The district court awarded neither party attorney fees, finding that both parties had sufficient ability to pay their own attorney fees. The divorce decree was entered on December 13, 2022.

¶10     In January 2023, Gail filed a motion to amend the district court's findings of fact under rule 52 of the Utah Rules of Civil Procedure. The court denied the motion in its entirety and awarded Steven partial attorney fees for having to respond to it. Gail filed an appeal on July 10, 2023.

---

3. The district court calculated Gail's and Steven's shares of each other's pensions by using the *Woodward* formula, which "grants a spouse one-half of the portion of the retirement benefits represented by the number of years of the marriage divided by the number of years of the acquiring spouse's employment." *Janson v. Janson*, 2019 UT App 106, ¶ 15 n.4, 448 P.3d 1 (citing *Woodward v. Woodward*, 656 P.2d 431, 433–44 (Utah 1982)) (cleaned up).

4. "A thrift savings plan is a defined contribution plan, similar to a 401(k) plan, for federal employees and members of the uniformed services." *Kidd v. Kidd*, 2014 UT App 26, ¶ 2 n.2, 321 P.3d 200 (cleaned up).

¶11    Meanwhile, Steven filed a motion to enforce the divorce decree on June 20, 2023. The motion dealt with Gail's failure to list the marital home for sale in a timely manner, her failure to return all the personal property allocated to Steven, and the language of the proposed order to effectuate the division of the parties' TSP. Gail filed a countermotion to enforce the divorce decree on October 4, 2023. In her countermotion, Gail asserted that Steven should be held in contempt "[f]or not removing Gail's name from the loan obligation on the Toyota Tundra, which was awarded to [Steven] as part of the property settlement." A commissioner ruled on the motions to enforce on November 8, 2023. By the time the commissioner issued a ruling, most of the issues involving the sale of the marital home and exchange of personal property were moot or otherwise resolved. The commissioner did, however, deny Gail's request to "hold [Steven] in contempt for not removing [Gail's] name from the loan obligation on the parties' Toyota Tundra . . . because [Steven] was not ordered to do so." The commissioner's rulings were later countersigned by the district court.

¶12    The district court also heard argument pertaining to the division of the TSP on January 25, 2024, and later issued a separate order on the issue. Gail did not file an amended notice of appeal to include the denial of her motion to enforce or the separate order involving the TSP.

ISSUES AND STANDARDS OF REVIEW

¶13    Gail raises several issues on appeal. First, Gail challenges the district court's alimony calculation. "District courts have considerable discretion in determining alimony and determinations of alimony will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Burggraaf v. Burggraaf*, 2019 UT App 195, ¶ 26, 455 P.3d 1071 (cleaned up).

¶14 Next, Gail asserts the district court should have awarded her a greater share of the marital estate. District courts have wide latitude in dividing marital property, and we do not lightly disturb orders distributing property. *See Merrill v. Merrill*, 2024 UT App 125, ¶ 31, 556 P.3d 1070. "Therefore, we review property distribution . . . under an abuse of discretion standard." *Id.* (cleaned up).

¶15 Gail also asserts the district court should have awarded her attorney fees. In this context, "both the decision to award attorney fees and the amount of such fees are within the sound discretion of the [district] court." *Taft v. Taft*, 2016 UT App 135, ¶ 86, 379 P.3d 890 (cleaned up). Appellate courts disturb the district court's attorney fee determination only if the court abused its discretion. *Id.*

ANALYSIS

I. Alimony

¶16 Gail raises two challenges to the district court's alimony award, both of which involve the district court's income determinations. First, Gail argues the district court improperly determined her income because it included her overtime wages as part of her total income. Second, Gail argues the district court abused its discretion when it imputed Steven $60,000 in income rather than the $144,000 he made prior to his retirement.

A. Inclusion of Gail's Overtime Income

¶17 In Utah, "[i]ncome from earned income sources" considered for alimony purposes is typically "limited to the equivalent of one full-time 40-hour job." Utah Code § 81-6-

203(2)(b).[5] However, overtime income can be considered "[i]f and only if during the time before the original support order, the [spouse] normally and consistently worked more than 40 hours." *Id.* § 81-6-203(2)(c). When "there is evidence suggesting a long-term pattern of a . . . spouse[] working extended hours, a [district] court does not abuse its discretion by concluding that the . . . spouse's[] income . . . should be calculated with the historically longer workweek in mind." *Miner v. Miner*, 2021 UT App 77, ¶ 83, 496 P.3d 242.

¶18    Here, Gail argues that although she has been working overtime and such overtime is reflected on her financial declaration and her tax returns, her overtime is temporary in nature and exists only due to a COVID-19 backlog. However, Gail's tax returns and paystubs reflected overtime work for more than one year. In fact, in the first seven months of 2022, Gail made more money from her overtime work than from her base salary. And while there were some pay periods where Gail worked no overtime hours, only four such periods occurred in the thirteen months before trial. Therefore, Gail's financial declaration and paystubs reflect that she has "normally and consistently" worked overtime. Utah Code § 81-6-203(2)(c); *see also Tobler v. Tobler*, 2014 UT App 239, ¶ 28, 337 P.3d 296 (holding that the husband normally and consistently worked overtime when his "tax returns and paystubs reflect[ed] a three-year history of overtime").

¶19    The district court's inclusion of Gail's overtime pay in her income was well within its discretion. Although Gail was not the

---

5. Utah Code section 78B-12-203 was recently renumbered as section 81-6-203. Because the renumbering did not materially affect the text of the statute, we cite the current version for the readers' convenience. And "although this section of the Utah Code addresses imputation for the purposes of child support, it is also relevant to imputation in the alimony context." *Miner v. Miner*, 2021 UT App 77, ¶ 83 n.9, 496 P.3d 242 (cleaned up).

primary income earner and did not work overtime during the bulk of the marriage, her financial declaration showed over a year of overtime work in nearly every pay period, making the overtime normal and consistent enough over a sufficiently long-term period to be considered by the district court. *See Clarke v. Clarke*, 2023 UT App 160, ¶ 27, 542 P.3d 935 ("[W]here there exists evidence sufficient to support a court's rulings regarding a divorcing couple's finances, that ruling will be upheld on appeal, even if evidence was presented that might have cut the other way."). Therefore, the district court did not abuse its discretion by including Gail's overtime income in her income determination because there was sufficient evidence to show a long-term pattern of Gail normally and consistently working overtime.[6]

B.      Failure to Impute Steven's Full Preretirement Salary

¶20     Gail also argues that the district court erred by not imputing Steven's full preretirement salary when determining his income for alimony purposes. However, because imputing more income to Steven would have no impact on the alimony award, Gail's argument is moot. *See State v. Legg*, 2016 UT App 168, ¶ 9, 380 P.3d 360 ("An issue on appeal is considered moot when the requested judicial relief cannot affect the rights of the litigants, or, in other words, when the requested relief appears to be impossible or of no legal effect." (cleaned up)).

¶21     In calculating alimony, "[t]he receiving spouse's needs ultimately set the bounds for the maximum permissible alimony

6. If, in the future, Gail can no longer work overtime, she can file a petition to modify the alimony award. *See Clarke v. Clarke*, 2023 UT App 160, ¶ 37, 542 P.3d 935 ("[T]here exists a specific remedy for situations in which a party's income changes materially after a trial has been held and findings about the parties' financial situation have been made: a party may file a petition to modify the existing order.").

award." *Rule v. Rule*, 2017 UT App 137, ¶ 17, 402 P.3d 153. Even if the payor spouse has the ability to pay more, the alimony award is capped at the amount of the receiving spouse's demonstrated need. *See Jensen v. Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117. Therefore, unless the receiving spouse's need exceeds the remaining income of the payor spouse after accounting for the payor spouse's reasonable expenses, increasing the income of the payor spouse will have no impact on the amount of alimony the receiving spouse receives.

¶22 The district court determined Steven's net monthly income to be $5,750 per month, with $2,000 coming from his pension and the rest being imputed income from an annual pretax salary of $60,000. The district court also found that Steven's reasonable expenses were $3,666 per month, leaving him with $2,084 that could go toward alimony, depending on Gail's need. *See Rule*, 2017 UT App 137, ¶ 17. Because we hold that the district court did not abuse its discretion in including Gail's overtime wages in her income calculation, *see supra* ¶¶ 17–19, the district court correctly calculated that Gail's net monthly income was $5,376 per month, with $3,376 from her wages from the IRS and $2,000 from Steven's pension. And because the district court found that Gail's monthly expenses were $5,749 per month, it determined that she had a shortfall and the "need of alimony in the amount of $373 as a base amount plus some extra amount for future gas expenses and travel" and awarded her alimony in the amount of $500 per month. Because the amount of Gail's demonstrated need—$500—is within Steven's current ability to pay, imputing more income to Steven would not increase Gail's alimony award because her award is capped at the amount of her need. *See Rule*, 2017 UT App 137, ¶ 17. Therefore, since imputing more income to Steven would not increase Gail's alimony award, this issue is moot and "we lack the power to address the underlying merits or issue what would amount to an advisory opinion." *Behar v. Johnson*, 2024 UT App 129, ¶ 19, 557 P.3d 607 (cleaned up).

## II. The District Court's Property Division

A.     The Toyota Tundra and TSP Division

¶23    Before we can examine Gail's substantive arguments involving the Toyota Tundra and the TSP, we must first address Steven's assertion that we lack jurisdiction to review these issues because Gail did not preserve or appeal them. It is well settled that "[w]e have jurisdiction to review only those rulings from which a timely notice of appeal was filed." *Ross v. Barnett*, 2018 UT App 179, ¶ 18, 436 P.3d 306. Steven argues that we lack jurisdiction to review the issues involving the Toyota Tundra and TSP because the district court dealt with them in separate appealable orders that Gail did not appeal. We agree.

¶24    "It is axiomatic in this jurisdiction that failure to timely perfect an appeal is a jurisdictional failure requiring dismissal of the appeal." *Id.* (cleaned up). Gail asserts she preserved the Toyota Tundra issue "by filing her Utah Rule of Civil Procedure 52 Motion to Amend Filings, filed January 17, 2023." However, in the rule 52 motion Gail does not mention the issue of the Toyota Tundra debt still being in her name even though Steven was awarded the vehicle. Gail did address the Toyota Tundra issue in her motion to enforce, but the motion to enforce was filed on October 4, 2023, several months after the notice of appeal was filed on July 10, 2023. The commissioner ruled on Gail's motion to enforce on November 8, 2023, and declined to "hold [Steven] in contempt for not removing [Gail's] name from the loan obligation on the parties Toyota Tundra . . . because [Steven] was not ordered to do so." And the district court countersigned that order on November 9, 2023. Because Gail did not file a notice of appeal or amended notice of appeal to include the ruling on the motion to enforce, she did not "perfect" any appeal from that ruling, and we therefore lack the jurisdiction to address it. *See id.*

¶25    Gail also asserts that she preserved the TSP issue in her rule 52 motion, but the only mention of the TSP in the rule 52 motion

is a passing reference about how the court previously found that Gail could likely obtain a home comparable to her current home if she combined the half equity from the marital home with her share of Steven's TSP. The district court did not hear argument on the TSP issue until January 25, 2024, and it later issued a separate order, which Gail did not appeal. Therefore, because Gail did not file an amended notice of appeal regarding this issue, we lack jurisdiction to address it. *See id.*

B.     Division of Equity in the Marital Home

¶26     Gail also argues the district court "should have ordered an unequal division of the marital equity in the home in order to offset Gail's significant disadvantage when entering the housing market with limited income and job experience and skills." "In Utah, marital property is ordinarily divided equally between the divorcing spouses. After identifying property as marital, the court must consider whether there are exceptional circumstances that overcome the general presumption that marital property be divided equally." *Keyes v. Keyes*, 2015 UT App 114, ¶ 28, 351 P.3d 90 (cleaned up). If such exceptional circumstances warrant an unequal division of the marital property, the district court must memorialize the exceptional circumstances in "detailed findings." *Bradford v. Bradford*, 1999 UT App 373, ¶ 27, 993 P.2d 887 (cleaned up).

¶27     Here, the district court followed the presumption that marital property be divided equally when it divided the equity in the marital home in half. For the district court to have divided the property differently, Gail needed to present evidence of exceptional circumstances to overcome the presumption. However, at trial, Gail presented no evidence about the impediments to her qualifying for a mortgage and why these impediments would constitute an exceptional circumstance that would require the district court to divide the equity in the marital home unequally. Further, in *Fischer v. Fischer*, 2021 UT App 145,

505 P.3d 56, this court held that the cost of selling the marital home and the fact that one party would be temporarily without a home were not the kind of exceptional circumstances that justified the substantial disparity in the value of the property awarded to each party. *See id.* ¶ 26.

¶28 Because Gail did not present any evidence at trial demonstrating why the impediments to her qualifying for a mortgage and the tax consequences of withdrawing from the TSP would be exceptional circumstances justifying the unequal division of the marital home, the district court did not have the opportunity to rule on it. Therefore, because no evidence was presented at trial to justify a deviation from the presumption of an equitable division, the district court did not abuse its discretion in dividing the equity in the marital home equally. *See Keyes*, 2015 UT App 114, ¶ 28.

### III. Attorney Fees

¶29 Gail also argues the district court should have awarded her attorney fees. We disagree.

¶30 "[I]n an action to establish an order of custody, parent-time, child support, alimony, or the division of property in a domestic case, the court *may* order a party to pay the . . . attorney fees . . . of the other party to enable the other party to prosecute or defend the action." Utah Code § 81-1-203(1)(a) (emphasis added).[7] An award of attorney fees "must be based on evidence of the receiving spouse's financial need, the payor spouse's ability to pay, and the reasonableness of the requested fees." *Dahl v. Dahl*, 2015 UT 79, ¶ 168, 459 P.3d 276 (cleaned up).

---

7. Utah Code section 30-3-3 was recently renumbered as section 81-1-203. Because the renumbering did not materially affect the text of the statute, we cite to the current version for the readers' convenience.

¶31 The district court's "decision . . . to award attorney fees under [the statute] is discretionary," *Wallace v. Wallace*, 2024 UT App 164, ¶ 45, 561 P.3d 187, and here the district court declined to award attorney fees because it found that Gail had "sufficient income to pay her own attorney's fees as per the analysis . . . regarding need and ability to pay."

¶32 On appeal, Gail argues the district court erred in not awarding her attorney fees because the court made multiple findings regarding Gail's financial hardship, Steven was in a more favorable financial position to pay, and Steven's actions contributed to both the divorce and Gail's current financial hardship. But even assuming that all the above is true and the criteria to award Gail attorney fees are satisfied, section 81-1-203 states that the district court "*may* order a party to pay the . . . attorney fees." Utah Code § 81-1-203(1)(a) (emphasis added). There is no requirement that the district court award attorney fees if the criteria are met; it is a discretionary decision for the district court to make. *See Wallace*, 2024 UT App 164, ¶ 47. Therefore, because Gail has not argued why the district court's decision to not "award her attorney fees was an abuse of discretion, i.e., a decision that no reasonable person would make," we affirm the district court's denial of Gail's request for attorney fees. *Id.*[8]

---

8. Steven also seeks attorney fees. He asserts that Gail's appeal is frivolous and requests an award of attorney fees incurred on appeal pursuant to rule 33 of the Utah Rules of Appellate Procedure. Utah R. App. P. 33(a) (allowing for reasonable attorney fees to be awarded for an appeal that is frivolous). "[A] frivolous appeal . . . is one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). "The sanction for bringing a frivolous appeal is applied only in egregious cases, lest there be an improper chilling of the right to
(continued…)

CONCLUSION

¶33 The district court did not abuse its discretion when it included Gail's overtime wages in its alimony determination and when it divided the marital estate equally. The issue of the district court's refusal to impute to Steven his full preretirement salary is moot. And the district court acted within its discretion when it denied Gail's request for attorney fees. Affirmed.

——————

appeal erroneous lower court decisions." *Staszkiewicz v. Thomas*, 2024 UT App 183, ¶ 23 n.3, 562 P.3d 723 (cleaned up), *cert. denied*, Mar. 20, 2025 (No. 20250160). Although Gail was unsuccessful on appeal, her arguments pertaining to the district court's alimony award and property division were "worthy of consideration and should not be subject to the chilling effect of rule 33 sanctions." *Marroquin v. Marroquin*, 2019 UT App 38, ¶ 36, 440 P.3d 757 (cleaned up). We therefore decline to award Steven attorney fees incurred on appeal.